IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MOISES CANTU,                        §
                                     §
         Plaintiff,                  §
                                     §
v.                                   §
                                     §   CIVIL ACTION NO. H-12-0302
JOHN F. NICHOLS, Adjutant            §
General Texas Military Forces,       §
and JOHN McHUGH, Secretary of        §
the Army,                            §
                                     §
         Defendants.                 §

**MEMORANDUM OPINION AND ORDER**

This case involves a former service member's challenge to his military discharge and removal from a dual status technician position with the Texas Army National Guard ("TXARNG"). Pending before the court is Defendants' Motion to Dismiss and Memorandum in Support ("Defendants' Motion to Dismiss") (Docket Entry No. 15). For the reasons discussed below, Defendants' Motion to Dismiss will be granted.

**I. Background**

Plaintiff Moises Cantu held a dual status technician position in the TXARNG, simultaneously serving as a civilian employee and a sergeant in the National Guard.[1] On June 13, 2008, Cantu submitted

---

[1]Original Complaint, Docket Entry No. 1, p. 2; Defendants' Motion to Dismiss, Docket Entry No. 15, p. 4, ¶ 5. By virtue of
(continued...)

to a random urinalysis at Ellington Field during his National Guard unit's drill weekend and was subsequently informed that he had tested positive for cocaine.[2] Proceedings to discharge Cantu from the TXARNG and the Army Reserve were initiated on July 11, 2008.[3] Proceedings to remove Cantu from his dual-status technician position were initiated on November 6, 2008.[4] Cantu was removed from his dual-status technician position on January 12, 2009,[5] and was discharged from the TXARNG and Army Reserve on May 20, 2010.[6] Cantu voluntarily waived his right to an administrative hearing regarding the military discharge on the condition that his separation from service would be characterized as "General (under honorable conditions)."[7]

---

[1](...continued)
his membership in the TXARNG Cantu was also a member of the Army Reserve. See Perpich v. Dept. of Defense, 110 S. Ct. 2418, 2426 (1990) ("The dual enlistment system requires state National Guard members to simultaneously enroll in the National Guard of the United States (NGUS), a reserve component of the national armed forces." (internal quotation marks omitted)).

[2]Original Complaint, Docket Entry No. 1, p. 3, ¶¶ 2-3; Defendants' Motion to Dismiss, Docket Entry No. 15, pp. 4-5, ¶ 7.

[3]Defendants' Motion to Dismiss, Docket Entry No. 15, p. 5, ¶ 8.

[4]Id. at 7, ¶ 14.

[5]Original Complaint, Docket Entry No. 1, p. 4, ¶ 6; Defendants' Motion to Dismiss, Docket Entry No. 15, p. 8, ¶ 18.

[6]Original Complaint, Docket Entry No. 1, p. 4, ¶ 8; Defendants' Motion to Dismiss, Docket Entry No. 15, p. 7, ¶ 13.

[7]Defendants' Motion to Dismiss, Docket Entry No. 15, Ex. 8.

Cantu initiated this suit against defendants John F. Nichols[8] and John M. McHugh[9] (collectively, "Defendants") on January 31, 2012, alleging that the TXARNG (1) failed to timely advise him of the urinalysis result leading to his forced separation from service, (2) failed to permit a re-test, and (3) failed to afford him due process by refusing to conduct an administrative hearing.[10] Cantu seeks monetary damages, as well as the reversal of the personnel decisions resulting in his removal as a technician and his discharge from the military.[11]

Defendants filed the pending motion to dismiss on June 5, 2012, arguing that the court does not have subject matter jurisdiction over these claims pursuant to the doctrine of intra-military immunity.[12] Defendants further argue that Cantu failed to exhaust his administrative remedies, as is required prior to judicial review of internal military decisions.[13] As to the removal from the technician position, Defendants also contend that Cantu

---

[8]John F. Nichols is the Adjutant General of Texas Military Forces. Original Complaint, Docket Entry No. 1, p. 3.

[9]John M. McHugh is the Secretary of the United States Army. Id.

[10]Original Complaint, Docket Entry No. 1, p. 1.

[11]Id. at 6.

[12]Defendants' Motion to Dismiss, Docket Entry No. 15, p. 1.

[13]Defendants' Motion to Dismiss, Docket Entry No. 15, p. 14; Reply in Support of Defendants' Motion to Dismiss ("Reply in Support"), Docket Entry No. 17, p. 3.

has no right to appeal that decision beyond the Adjutant General.[14] Cantu filed his opposition to the motion to dismiss on June 26, 2012.[15] Cantu argues that an exception to the doctrine of intra-military immunity applies in this case and that he was denied the opportunity to exhaust his administrative remedies.[16] Defendants filed a Reply in Support of their motion to dismiss on July 3, 2012.[17]

## II.   Applicable Law

### A.   Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits parties to file motions challenging a district court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks omitted). The court must dismiss the action if it finds that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

As the party seeking to invoke federal jurisdiction, Cantu bears the burden of establishing subject matter jurisdiction.

---

[14] Defendants' Motion to Dismiss, Docket Entry No. 15, p. 15.

[15] Plaintiff's Response and Opposition to Defendants' Motion to Dismiss ("Response and Opposition"), Docket Entry No. 16.

[16] Id. at 4.

[17] Reply in Support, Docket Entry No. 17.

Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The court may find that subject matter jurisdiction is lacking based on "'(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Walch v. Adjutant General's Dept. of Texas, 533 F.3d 289, 293 (5th Cir. 2008) (quoting Robinson v. TCI/US West Communications Inc., 117 F.3d 900, 904 (5th Cir. 1997)). A court should grant a Rule 12(b)(1) motion "only if it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim that would entitle [it] to relief." Home Builders Ass'n, 143 F.3d at 1010.

### B. The Feres Doctrine and Dual Status Technicians

Defendants argue that Cantu's claims are non-justiciable under the doctrine of intra-military immunity, commonly known as the Feres doctrine, and should therefore be dismissed for lack of jurisdiction. The Feres doctrine, derived from Feres v. United States, 71 S. Ct. 153 (1954), broadly prohibits suits by United States military personnel based on injuries suffered "incident to service" in the armed forces. How the doctrine applies to claims arising from the service of a member of a state's National Guard -- specifically, a dual-status technician -- is at issue in this case.

At its core the Feres doctrine is designed to prevent judicial second-guessing of military decisions: "'Orderly government

requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.'" Chappell v. Wallace, 103 S. Ct. 2362, 2366 (1983) (quoting Orloff v. Willoughby, 73 S. Ct. 534, 540 (1953)); see also Chappell, 103 S. Ct. at 2366 ("Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment."). This basic principle inheres in both Supreme Court and Fifth Circuit decisions involving suits by members of the military.

In barring service members from bringing negligence suits under the Federal Tort Claims Act ("FTCA"), the Supreme Court established in Feres that "the Government is not liable . . . for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres, 71 S. Ct. at 159; see also Chappell, 103 S. Ct. at 2368 (barring suits by enlisted men against superior officers for alleged unconstitutional discrimination); United States v. Johnson, 107 S. Ct. 2063, 2069-70 (1987) (barring family of deceased service member's FTCA suit against government even though alleged negligence was by civilian, nonmilitary members of federal government); Unites States v. Stanley, 107 S. Ct. 3054, 3064 (1987) (barring Bivens action for injuries that "'arise out of or are in the course of activity

-6-

incident to service'") (quoting Feres, 71 S. Ct. at 159). The "incident to service" test, according to the Supreme Court, provides a clear line that courts can discern without extensive inquiry into military matters. Stanley, 107 S. Ct. at 3063. In the Fifth Circuit whether an activity is incident to military service is analyzed in light of three factors: (1) duty status, (2) site of injury, and (3) activity being performed. Walch, 533 F.3d at 297 (citing Parker v. United States, 611 F.2d 1007, 1013-15 (5th Cir. 1980)).

The Feres doctrine applies with equal force to dual-status technicians. See Walch, 533 F.3d at 297; Williams v. Wynne, 533 F.3d 360, 367 (5th Cir. 2008); Brown v. United States, 227 F.3d 295, 297 (5th Cir. 2000). It is true that "a military technician (dual status) is a Federal civilian employee." 10 U.S.C. § 10216(a). But that statute also provides that such a technician "is required as a condition of that employment [(i.e., civilian employment)] to maintain membership in the Selected Reserve." 10 U.S.C. § 10216(a)(1)(B). Moreover, 32 U.S.C. § 709(b) requires that a dual-status technician be a member of the National Guard, hold the military grade specified by the Secretary of the Army for that position, and wear the uniform appropriate for that grade and component of the armed forces. Indeed, "the military character of [dual-status technicians'] service is extensive." Walch, 533 F.3d at 296. Fundamentally, as the Fifth Circuit recognized in Brown, dual status technicians "are civilian employees whose positions require that they also serve in the military reserves." Brown, 227

F.3d at 297. Thus, for purposes of the Feres doctrine, "[i]t is not possible to disentangle" a dual-status technician's "military role and command structure from [his] civilian employment, such that suits [alleging constitutional violations] may proceed without raising the same concerns as when those claims are brought by traditional Guardsmen." Walch, 533 F.3d at 297. Accordingly, in light of the three "incident to service" factors, Feres bars claims brought by dual-status technicians where the claims relate to dual-status service, arise on military bases or other military locations, and involve dual-status activities. Id.

C.  **Exceptions to the Feres Doctrine**

The Feres doctrine is not an absolute bar to federal court jurisdiction. After a service member has exhausted his administrative remedies, a court may review an internal military decision to determine if an official exceeded his authority or if the decision violated constitutional, statutory, or regulatory rights. Walch, 533 F.3d at 302 (citing Mindes v. Seaman, 453 F.2d 197, 199-201 (5th Cir. 1971)). Final military decisions made by boards for the correction of military records, such as the Army Board for the Correction of Military Records ("ABCMR"), are subject to judicial review under the Administrative Procedures Act and can be set aside if they are arbitrary, capricious, or not supported by substantial evidence. Williams, 533 F.3d at 368. Importantly, a dual-status technician "may, at any time, be separated from his

technician employment for cause by the adjutant general of the jurisdiction concerned." 32 U.S.C. § 709(f)(2). Any right of appeal that may exist in such a situation "shall not extend beyond the adjutant general of the jurisdiction concerned." 32 U.S.C. § 709(f)(4).

### III. Analysis

#### A. The Feres Doctrine

Cantu's complaint charges that both his discharge from the TXARNG and removal from his civilian technician position were wrongful. The court concludes that it does not have the power to consider the merits of these claims. Under the three-factor test articulated in Walch, Cantu's claims are clearly incident to military service and therefore barred by the Feres doctrine. The urinalysis was administered during Cantu's National Guard unit's drill weekend, in which he was participating as a member of the Selected Reserves. Cantu therefore tested positive for cocaine while carrying out duties required of a dual-status technician. See 10 U.S.C. § 10216(a)(1)(B) (requiring dual-status technicians to maintain membership in the Selected Reserve). The drug test occurred at Ellington Field, a military facility. And the drug test was inextricably intertwined with his dual-status activities, which require that technicians be unimpaired by illegal drug use. The decision to discharge Cantu was therefore "incident to service," and any claim arising out of that decision is barred by

the Feres doctrine. See Williams, 533 F.3d at 368 ("Regardless of whether the [plaintiff] ingested the drugs while on military status, he tested positive for cocaine use while on military status and the decision to discharge him as a result was therefore a military personnel management decision, which was integral to the military structure and which we will not second guess.").

Because "[i]t is not possible to disentangle" Cantu's civilian role from his military role as a dual-status technician, any claim regarding Cantu's removal from his technician position is barred to the same extent as those regarding his military discharge. As the Fifth Circuit noted in Walch, a dual-status technician's employment is "sufficiently intertwined with the military" that litigation would cause precisely what the Feres doctrine seeks to prevent: judicial second-guessing of the military. Walch, 533 F.3d at 297; see also Williams, 533 F.3d at 367 ("[A] court may not reconsider what a [dual-status technician]'s superiors did in the name of personnel management . . . because such decisions are *integral to the military structure*.") (internal quotation marks omitted). At bottom, "[j]udicial re-examination of such decisions would be disruptive to the military." Filer v. Donley, 690 F.3d 643, 649 (5th Cir. 2012).

### B.  No Exception to the Feres Doctrine Applies

Cantu argues that the Feres doctrine should not apply because his superiors acted "in excess of their authority" by denying him

-10-

a hearing.[18]  The court is not persuaded.  First, Cantu clearly waived his right to a hearing regarding the military discharge; the hearing was not denied.  As a result, Cantu never appealed the military discharge to the ABCMR, eliminating the possibility of a final decision from the ABCMR to review.  See Williams, 533 F.3d at 368 (only final decisions from the ABCMR are subject to judicial review).  Therefore, the claims regarding the military discharge cannot justify an exception to the Feres doctrine.  Any claims regarding the removal from the technician position are therefore moot because membership in the National Guard is an absolute requirement for employment as a dual-status technician.

There are also other, independent, grounds to conclude that Cantu has no claim regarding his removal from the technician position that can justify an exception to the Feres doctrine. First, the adjutant general had the authority to remove Cantu without providing a hearing.  See 32 U.S.C. § 709(f)(2) (adjutant general may separate dual-status technician from employment for cause at any time); see also Walch, 533 F.3d at 302 ("The Texas Adjutant General had authority without a hearing being provided, to discharge [the plaintiff] for poor performance.").  Thus, Cantu cannot show that Defendants exceeded their authority in failing to conduct a hearing.  Second, Cantu does not point to any statute or regulation that he claims was violated or that states that he had

---

[18]Response and Opposition, Docket Entry No. 16, p. 4.

a right to a hearing. Cantu therefore cannot show that he has a legitimate claim of entitlement to a hearing sufficient to establish a violation of his constitutional due process rights. See Pers. Care Prods., Inc. v. Hawkins, 635 F.3d 155 (5th Cir. 2011) (due process requires that a plaintiff have a legitimate claim of entitlement and more than a unilateral expectation of a benefit). The Feres doctrine applies without exception to this case and renders Cantu's claims non-justiciable.

## IV.  Conclusion

The court concludes that Cantu's claims are barred by the Feres doctrine because both the military discharge and the removal from the technician position were military decisions made "incident to service." The court therefore lacks subject matter jurisdiction and is required to dismiss the action under Federal Rule of Civil Procedure 12(h)(3).

## V.  Order

For the reasons explained above, Defendants' Motion to Dismiss (Docket Entry No. 15) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 16th day of October, 2012.

SIM LAKE
UNITED STATES DISTRICT JUDGE